IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

AMES MUNICIPAL ELECTRIC SYSTEM,  )
                                 )    Civil No. 4:20-cv-00073-SMR-SBJ
                                 )
         Petitioner,             )
                                 )
     v.                          )
                                 )
IOWA UTILITIES BOARD,            )    UNITED STATES DEPARTMENT OF
                                 )    AGRICULTURE'S OPPOSITION TO
         Respondent,             )    MOTION FOR REMAND
                                 )
UNITED STATES DEPARTMENT OF      )
AGRICULTURE,                     )
                                 )
         Respondent.             )

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................2

ARGUMENT ............................................................................................................4

    I.    The United States has a Broad and Liberally Construed Right to a Federal Forum to Adjudicate its Interests................................................................................4

    II.   Ames' Action Seeking Judicial Review is Directed to the USDA ...............................5

    III.  Where the Agency Itself Removes, it Need Not Assert a Federal Defense................11

    IV.  The USDA has Asserted the Colorable Federal Defense of Sovereign Immunity......12

    V.   The IUB's Separate Arguments are Without Merit ....................................................16

    VI.  Even if They Prevail on Motion for Remand, the Parties Seeking Remand Should Not Be Awarded Fees ........................................................................................18

CONCLUSION........................................................................................................20

## INTRODUCTION

The Ames Municipal Electric System ("Ames") filed a Motion to Remand, to which various other parties filed joinder and/or briefs in support. The United States Department of Agriculture ("USDA") will respond to all the arguments concerning remand in this single brief. The decision by the Iowa Utilities Board ("IUB"), and Ames' Petition for Judicial Review of that decision, are clearly "directed" to a federal agency intending to guide its actions. For the reasons that follow herein, remand is wholly inappropriate.

This case has its origins in a long-running conflict between a federal agency, the USDA, and a local government-run utility, Ames, over whether the USDA can disconnect a federally owned and operated laboratory building previously within Ames' "exclusive service area" (as defined by IUB) from Ames' power. The USDA could have simply disconnected from Ames and waited to be sued, at which point it would have removed and moved to dismiss on sovereign immunity grounds. However, in the interest of comity and out of a concern to avoid inadvertently harming the interests of innocent third parties, and to avoid unnecessary expenditures, USDA gave IUB an opportunity to fix the problem by exercising its authority to change the boundaries of exclusive service areas under Iowa law.[1]

No good deed goes unpunished. The parties seeking remand argue that because the USDA gave the state an opportunity to fix a problem the state created in the first place—namely splitting USDA's contiguous property between two different electricity providers—that the USDA should now be denied a federal forum it would undoubtedly have had if it simply acted and waited to be sued. That would be a gross miscarriage of justice.

---

[1] USDA asserts that at all times, sovereign immunity would have allowed it to disconnect from Ames and connect to IPL, and/or increase its own internal production, such that it did not need the imprimatur of the IUB. However, the end result of such action would have been a lawsuit against USDA, IPL, or both. This would have happened after USDA expended significant funds to switch over its service to IPL.

If—as Ames now contends, the IUB's Decision is not directed to USDA, then the USDA should have been at all times free to switch its power supply to Interstate Power and Light Company ("IPL"). To say that the civil action at issue, which is ultimately about Ames attempting to force the United States to purchase its electrical services, is not directed at the United States merely because it arose in state court through a judicial review of state agency decision, would elevate form over substance. All that is required for removal by an agency of the United States is that a civil action in state court be directed to that agency. Ames' petition for judicial review, while naming the IUB as Respondent because it was the agency that issued the decision being appealed, is aimed squarely at the United States Department of Agriculture. That fact is all that is necessary for removal to be proper. The Motion for Remand should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 11, 2018, the United States Department of Agriculture filed a customer complaint with the IUB.[2] The complaint asked the IUB to evaluate Ames Municipal Electric System's ("Ames") ability to meet the highly specialized electrical needs of the USDA's National Centers for Animal Health (the "Centers"), a large agricultural research facility on the northeast side of Ames. The Complaint raised, in particular, the fact that the Centers were split between the exclusive service areas of two different electricity providers, IPL, serving the northern portion, and Ames, serving the southern portion of USDA's property. As further elaborated in subsequent filings, this split created a number of problems, including making it extremely difficult for USDA to effectively integrate all of its laboratory buildings into the same electrical system and take advantage of the main monitoring facility and on-site generators available on the northern portion of the property. (RD 8-30). One particular laboratory building, Building 21, previously served by

---

[2] USDA's First Amended Notice of Removal, Ex. D. (hereinafter referred to as "RD"), 2-6.

Ames, was particularly concerning because of current use and planned expansion that includes biological laboratories housing dangerous pathogens that require absolute electrical redundancy at all times to ensure biological containment. The United States presented unrebutted testimony from research scientists and the Centers' chief engineer that the inadequate power supply not only endangers the mission of the NCAH as a premier research lab legally required to maintain certain accreditation standards to avoid being shut down by the CDC, but could actually endanger human life by causing a bio-containment breach of dangerous pathogens. (RD 16-18, 25-30, 95, 103)

Although the United States has consistently argued that it can stand on its sovereign immunity to disconnect its building from Ames and serve it with power generated by its own turbine and/or from its connection with IPL, the United States preferred to give state authorities an opportunity to resolve the matter out of comity and concern for the rights of third parties. (RD 116-118). The United States suggested that the cleanest way to resolve the matter was for the IUB to exercise its power to change electrical service boundaries and resolve the issue once and for all. Originally, the USDA asked only for the boundaries to be moved sufficiently that Building 21, the laboratory building of particular concern, fall henceforth in IPL's exclusive service area or that the IUB otherwise acknowledge that it would not be a violation for USDA to connect Building 21 to its northern power grid (RD 3).

Following a contested case in which the IUB was sitting as a quasi-judicial decision-maker (not a party to the case), on January 23, 2020, IUB issued an Order Modifying Exclusive Electric Service Territory and Directing Further Filings (the "Order"), which ordered:

1. The service territory boundaries between Ames Municipal Electric System and Interstate Power and Light Company shall be modified to include all of the United States Department of Agriculture's Ames, Iowa, campus in Interstate Power and Light Company's service territory.

2. Within 30 days of this order, the parties shall file with the IUB a joint proposed compensation plan for the modification of the service territories that transfers all of the United States Department of Agriculture's Ames, Iowa, campus to Interstate Power and Light Company's service territory.

(*See* First Amended Notice of Removal, Ex. B. ("IUB Order"), at 12).

On February 21, 2020, Ames filed its Petition for Judicial Review ("Ames Petition") in the Iowa District Court for Story County, Iowa. (*See* First Amended Notice of Removal, Ex. A.). On February 26, 2020, the USDA intervened and, on the same day, the Iowa District Court for Story County entered an Order "that the USDA is permitted to intervene in this action and is recognized as a respondent. (*See* First Amended Notice of Removal, Ex. C.). On February 28, 2020, the USDA filed its Notice of Removal with this Court, which was amended and restated by USDA's First Amended Notice of Removal filed March 23, 2020.

## ARGUMENT

The USDA is entitled to a federal forum to determine whether a state and/or local government can compel it to purchase electricity from a provider it considers inadequate and unsafe to the needs of its federal mission. Because this ultimately is the end game of Ames' effort to overturn to the decision of the IUB, there can be no serious doubt that the litigation under removal is directed to a federal agency. Because this is all that is required for removal to be appropriate, the Court should deny the Motion for Remand.

I. The United States has a Broad and Liberally Construed Right to a Federal Forum to Adjudicate its Interests.

The United States removed under the authority of 28 U.S.C. § 1442, which provides in relevant part:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

**(1)** The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

The "removal statute's 'basic' purpose is to protect the Federal Government from the interference with its 'operations'" by state and local governments. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 150–51 (2007) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). The Supreme Court has recognized that "State-court proceedings may reflect 'local prejudice' against" the federal government. *Id.* (citing *State of Maryland v. Soper*, 27 U.S. 9, 32 (1926)); *see Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (holding that there is a federal interest in considering "the merits of the state-law question free from local interests or prejudice and enabling the defendant to have the validity of his immunity defense adjudicated in a federal forum"). "In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Willingham*, 395 U.S. at 407. "This policy should not be frustrated by a narrow, grudging interpretation of 1442(a)(1)." *Id.* "Unlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 466–67 (3d Cir. 2015).

II.   <u>Ames' Action Seeking Judicial Review is Directed to the USDA</u>

The parties seeking remand argue for an extremely narrow, grudging interpretation of the term "directed to" in 1442(a)(1). They argue, essentially, that because Ames' Petition for Judicial Review did not originally name the USDA as a respondent, that it is not directed to the USDA. Such an approach ignores both recent amendments to 28 U.S.C. § 1442 and the substantive facts of the present dispute. It is clear that section 1442 applies even to cases where the United States is

not a party in the traditional sense but has substantive interests at stake, and that the substantive interests of the United States are at stake in the present conflict.

Two recent amendments to the federal removal statute are instructive. Following one of the few narrow court interpretations of section 1442(a)(1), in which the Supreme Court held under a prior version of the statute that agencies could not remove under section 1442, Congress legislatively overturned the court ruling in 1996, by amending section 1442(a)(1) to allow for removal by "the United States or any agency thereof." Federal Courts Improvement Act of 1996 (FCIA), Pub. L. No. 104–317, § 206, 110 Stat. 3847, 3850 (codified as amended at 28 U.S.C. § 1442); U.S. Code Cong. & Admin. News 1996, pp. 4202, 4210 (noting that the amendment "legislatively reverses the Supreme Court's decision in *International Primate Protection League*"); *see International Primate Protection League v. Administrators of Tulane Educ. Fund,* 500 U.S. 72, 79 (1991) (decision overturned by FCIA, holding that an agency of the United States, as opposed to a federal officer, could not remove a case from state to federal court). A few years later, Congress passed the Removal Clarification Act of 2011, which among other things amended section 1442(a) to allow removal of actions "against or directed to" federal entities, as opposed to just "against" them, thus explicitly allowing removal in cases where the government was not a traditional defendant. Removal Clarification Act of 2011, Pub. L. No. 112–51, § 2, 125 Stat. 545, 545 (codified as amended at 28 U.S.C. §§ 1442, 1446, 1447 (2012)).

There is no doubt that the United States Department of Agriculture is an agency of the United States entitled to remove actions under the 1996 amendments to the removal statute. Thus the only question is whether the above-captioned action is against or directed to USDA within the expanded, broadly-construed meaning of the 2011 amendments. It does. While the IUB is the nominal original respondent inasmuch as it is the IUB's decision that Ames appeals from, that

decision was issued in response to a customer complaint filed by the USDA in order to resolve its concerns about the power supply to a federal facility. The mere fact that IUB went further than USDA initially requested, and reassigned the entire southern portion of the USDA campus (rather than merely the laboratory building USDA asked to reassign), doesn't change this fact. If anything it makes the stakes for USDA even higher since it now concerns the power supply to its entire campus. Any interpretation of "directed to" a federal agency that excludes judicial review of a decision addressing the power needs of that very agency at a critical research facility would be narrow and grudging indeed.

It would be the worst sort of procedural sophistry to pretend that the current dispute about exclusive service areas is not ultimately about whether the United States is required to continue to purchase power from the City of Ames. Ames can swear up and down that all it is seeking is a restoration of its exclusive service area under state law, but what is the point? What is restoring its exclusive service area *directed to*? It is directed to requiring the United States to continue to purchase power from Ames based on an argument that the United States would be bound to respect the boundaries of Ames' restored exclusive service area.

Ames relies heavily on an unpublished district court decision from the District of Minnesota in which that Court found that removal was not appropriate where the United States had attempted to intervene in a state court proceeding between two private parties. *See Guggenheimer v. Starkey Laboratories, Inc.*, 2016 WL 7479542, at *8 (D. Minn. 2016) (holding that section 1442(a)(1) does not provide a federal forum where the government merely inserts itself into dispute between two private parties). The plaintiffs in that case had filed two related employment cases against their employer, which were not in any sense directed to—indeed had nothing to do with—the United States or any federal agencies. *Id.* at *1. The United States, having

7

indicted certain other employees of the defendant employer, sought to intervene in the case to obtain a delay of discovery, arguing that civil discovery in the employment cases could disturb the integrity of certain federal criminal cases. *Id.* at *4. Following denial of the motion to intervene, the United States sought to remove based on the argument that the denial of the motion to intervene—not the original lawsuit—was directed to the United States. *Id.* The Court found this connection too attenuated to justify removal, even while acknowledging the broad construction of section 1442. *Id.* at *7.

The facts of the case now before the Court are distinguished from *Guggenheimer* in every relevant respect, and indeed the holding of that case supports removal in this one. Here the USDA is not seeking to insert itself into a dispute that has nothing to do with it; it is seeking to defend a decision it asked for arising out of a proceeding it initiated by filing a complaint, participated in fully as a party of record, about a decision that concerns the power supply to a USDA facility. Also, the *Guggenheimer* court appears to have found significant that the intervention at issue in that case was permissive, at the discretion of the state district court, whereas USDA's intervention in the current matter was as a right since it was a party of record in the state administrative proceeding being appealed. *See* Iowa Code § 17A.19(2) (noting that any party of record in the contested case need only appear within 45 days of the petition for judicial review in order to intervene). Here, Ames' civil action seeking judicial review is in reality aimed at the federal government, *i.e.,* to force the USDA to continue to purchase power from it, which is exactly what the *Guggenheimer* court said "directed to" means. *See Guggenheimer*, 2016 WL 7479542, at *7 (holding "the civil action itself—not just the judicial order—must be aimed at the United States by another party to make a proceeding removable").

The meaning of "directed to" is not limited to cases where the United States is served with third party discovery. Ames again goes back to the *Guggenheimer* well in citing it for the proposition that "directed to" only applies where discovery is sought against the federal government in state court cases. But this misstates the holding and is inconsistent with both the plain meaning of the statute and other courts' interpretation. The *Guggenheimer* Court merely noted that legislative history suggesting the 2011 amendment was intended to address "the coercive exercise of state-court subpoena power against federal entities is a useful interpretive touchstone," while explicitly acknowledging that "the statute's broad language, rather than the House Report, is binding on the Court." *Guggenheimer*, 2016 WL 7479542, at *8. Other courts have explicitly rejected the notion that "directed to" is limited to matters in which discovery is sought against the United States and have applied it to a variety of contexts. *See In re Rotondo*, 2018 WL 3741993, at *7 (E.D. Mich. 2018) (rejecting the argument that legislative history limits the phrase "directed to" to discovery proceedings and holding "[w]hile the court sees no reason to sort through various congressional reports to discover the proper interpretation of the removal statute, even if the court were to rely on the statute's legislative history, it would not support" such a position); *see also Jax Leasing, LLC v. Xiulu Ruan*, 359 F. Supp. 3d 1129, 1134 (S.D. Ala. 2019) (holding that even though action to establish lien priority did not state any claim against the United States, it was directed to the United States since "judgment that the plaintiff's lien against the subject vehicles primes the United States' lien against the same property would render it more difficult for the United States to recover assets and would thus interfere with the public administration regarding the enforcement of restitution orders").

The key thread throughout the cases is that a matter is directed to the United States where the United States is a real party in interest whose legal rights could be impacted by the case. For

instance, in one Central District of California case the Court found that the United States was a real party in interest such that a state bar proceeding involving an individual attorney's unlicensed practice of law was "directed to" the federal government where the attorney in question was a Judge Advocate in the Army National Guard. *See In re Lusk*, 2016 WL 4107671, at \*4 (C.D. Cal. July 30, 2016). The Court's reasoning is persuasive:

> The Application here seeks to seize a law practice of a federally certified JAG. Such an action may interfere with the United States' operation of its federal JAG program, which currently only requires trial or defense counsel practicing in military courts martial to be members of any state bar. *See* 10 U.S.C. § 827(b); *accord* Military Court Martial Rule 502(d)(1). As such, the Application is effectively "directed to" the United States and its military operation regarding the licensure requirements for its attorneys practicing in military courts martial. And because the United States has a right to a federal forum, it properly removed the Application to this court under Section 1442(a)(1).

*In re Lusk*, 2016 WL 4107671, at \*3 (C.D. Cal. 2016). This focus on interference with public administration is a key concept. Even under the prior version of the statute, the Supreme Court held that a "suit is against the sovereign 'if the judgment sought would . . . interfere with the public administration' . . . or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947), and *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 704 (1949)).

The United States is a real party in interest in the present matter, in which Ames' action is directed towards interfering with the federal government's administration of a public facility. Ames is quite correct that the interference here is not the mere inconvenience of having to comply with state court discovery. Rather it is the far more serious matter, indeed the life-or-death matter, of being burdened with an inadequate power supply to a federally-operated biological laboratory containing deadly pathogens. If the present facts don't demonstrate a sufficient federal interest stake to entitle the United States to a federal forum, then no case does.

10

III.    Where the Agency Itself Removes, it Need Not Assert a Federal Defense

Where an official seeks to remove based on the assertion that the actions he is being sued over were taken under color of federal office, Courts have required him to state facts sufficient to show the actions in question were actually taken under color of office, *i.e.,* that he would be entitled to assert a federal official immunity defense. *Mesa v. California*, 489 U.S. 121, 136-137 (1989). However, this does not make sense in the context where an agency itself is removing because an agency does not have an "office" and is a creation of federal law incapable of acting in an individual capacity. The best reading of the statute is that when an action is against or directed to a federal agency, it may remove without any additional requirements.

The Sixth Circuit has examined this issue in depth, and their analysis is worth quoting at length:

> The text of § 1442(a)(1), is best read to mean that the three entities that can remove are (1) the United States; (2) any agency thereof; or (3) any officer of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office. A possible different reading—assumed by the parties in this appeal—is that the three entities that can remove are (1) the United States; (2) any agency thereof; or (3) any officer of the United States or of any agency thereof; and that each of these entities must be sued in an official or individual capacity for an act under color of such office. Although the latter reading is supported by the placement of a comma directly preceding the word "sued" (suggesting that everything after the comma (i.e., the "sued" clause) applies to each element of the list before the comma: the United States, any agency thereof, or any officer of the United States or any agency thereof), that reading does not make sense because the United States and federal agencies are not "sued in an official or individual capacity" and are not sued for an "act under color of such office." Indeed, distinguished scholars of federal jurisdiction have questioned whether amended § 1442(a)(1) should "be read to permit the United States to remove only when it is 'sued in an official or individual capacity for any act under color of such office'— perhaps a null set and surely a peculiar category." See Richard H. Fallon, Jr., Daniel J. Meltzer & David L. Shapiro, Hart and Wechsler's *The Federal Courts And The Federal System* 910 (5th ed.2003). Moreover, the Supreme Court rejected an interpretation of an earlier version of the statute that would have applied a similar "sued" clause to agencies because under that interpretation, the statute "read[ ] very awkwardly" because "[a]n agency would not normally be described as exercising authority 'under color' of an 'office.'" *Int'l Primate Prot. League v. Adm'rs of*

*Tulane Educ. Fund,* 500 U.S. 72, 80, 111 S. Ct. 1700, 114 L.Ed.2d 134 (1991). Our independent reading of the text of § 1442(a)(1) is thus that a federal agency defendant may remove without more.

*City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 389–90

(6th Cir. 2007). This also means it is unnecessary for an agency, as opposed to a federal official,

to state a colorable federal defense. *Id.* at 391.

The Eighth Circuit has so far avoided the need to rule on whether a federal agency may

remove without raising a colorable federal defense by simply finding that a federal defense was

available. *See United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001) (finding that the United

States had asserted a colorable federal defense for removal under section 1442 rather than rejecting

the need for one). This District has taken the same approach. *See First Nat'l Bank of Muscatine v.

Keith*, 2009 WL 10670699, at \*2 (S.D. Iowa 2009) ("This Court need not determine whether a

federal defense is or is not required when an agency of the United States removes an action

pursuant to § 1442(a)(1) because the Defendant has clearly stated a colorable federal defense . . .").

While the Court can certainly go that route in this case (*see* Argument, Section IV, *infra*.) if the

Court chooses to rule on the issue it should do so consistent with the intent of Congress to give

agencies an unfettered right to remove actions directed to them. *See Cookeville*, 484 F.3d at 390

("The Senate Report supports a reading that § 1442(a)(1) as amended permits a federal agency to

remove to federal district court without limitation.")

IV.    The USDA has Asserted the Colorable Federal Defense of Sovereign Immunity

Although it was not necessary to entitle it to removal, the United States has asserted a

colorable federal defense in this matter, namely sovereign immunity. In *Willingham v. Morgan*,

the Supreme Court held that a federal official may remove a state action pending against him and

assert defenses based upon sovereign immunity. *Willingham v. Morgan*, 395 U.S. 402, 406-07

(1969). Following the 1996 amendments, the agency itself can now remove on that basis. *See Keith*, 2009 WL 10670699, at *2 (Southern District of Iowa holding that "Defendant has clearly stated a colorable federal defense sufficient to satisfy the *Mesa* standard, namely, sovereign immunity"). While Ames may argue it is not seeking any ruling directly against the United States, the sovereign immunity of the government must be addressed for two reasons: (1) any practical relief will require an order by some court directing the United States to comply with state exclusive service areas; and (2) the United States actually argued sovereign immunity before the IUB and any judicial review will therefore have to address the issue.

Ames asks that the Court put blinders on and ignore the larger context of this case, which is entirely about whether the USDA will be forced to continue to purchase electricity from Ames. Ames is not going to the time and expense of appealing the IUB's decision as an intellectual exercise to vindicate some abstract principle. It is doing it for the reason it has fought the USDA tooth and nail at every step, because it wants to continue selling power to the USDA. USDA has clearly indicated it does not wish to continue purchasing power from Ames, and that it believes it is entitled to disconnect from Ames on sovereign immunity principles. Thus, if Ames prevails in obtaining reversal of the IUB decision, it must ultimately ask a Court to order the USDA to comply with the IUB decision. Unavoidably, a court will have to resolve the sovereign immunity question. Some Court is going to have to either order USDA to comply with state law regarding exclusive service areas or hold that the USDA is not required to comply with such law. That question cannot be avoided if Ames is to obtain meaningful relief.

Moreover, it is not merely that the government's sovereign immunity will someday have to be adjudicated, the USDA actually raised sovereign immunity in the proceedings before the IUB under review. In its pre-hearing brief to the IUB, the United States argued that there was no

relevant waiver of sovereign immunity that would make the United States subject to state law regarding exclusive service areas (USDA's Pre-Hearing Brief, at 6-8, RD 116-118). The closest thing to a waiver the USDA was able to identify was the Public Buildings Act of 1959, which provides that construction of federal buildings must comply with local "zoning laws [and] Laws relating to landscaping, open space, minimum distance of a building from the property line, maximum height of a building, historic preservation, esthetic qualities of a building, and other similar laws." 40 U.S.C. § 3312(c)(1)&(2). This provision does not include, nor provide that the United States government is subject to the jurisdiction of state utilities regulatory boards or more generally to any state's determination of utilities boundaries. As is always the case, all waivers of sovereign immunity are to be narrowly construed. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied . . . [m]oreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign"). That is, there must be a specific statutory waiver subjecting the United States to the jurisdiction of another entity. There is no such waiver here.

Even if the Public Buildings Act applied to the present circumstances, it only requires consultation with local authorities, and federal law specifically disallows an action against the United States in the event the Federal Government declines to "carry out any [such] recommendation." *See* 40 U.S.C. § 3312(f). Thus, even if the Court found utilities boundaries are similar to zoning laws such that the United States has a duty to consult with local authorities, the United States has clearly fulfilled any such obligation by going to the IUB and requesting that they resolve the problem. But in doing, it has clearly not waived sovereign immunity from suit in the event USDA ultimately declines to carry out IUB's recommendations.

In order to grant Ames the relief it seeks, any reviewing Court will have to address whether the USDA is entitled to self-help, *i.e.*, to simply hook up Building 21 to its northern power grid. If USDA is not entitled to self-help under state law, the reviewing Court will have to address whether it is entitled to self-help under principles of sovereign immunity. IUB, while acknowledging that self-help was one of the issues before it, avoided ruling on the issue, reasoning:

> The IUB is modifying Ames' and IPL's service territories on its own motion. Therefore it is not necessary for the IUB to reach a decision regarding this issue.

(IUB Order, at 11). However, Ames is asking the Court to "[r]everse or modify the IUB ruling to restore Ames' service territory," or "[r]emand the matter to the IUB with instructions to make a proper determination and resolution of the complaint proceeding, restoring Ames's service territory." (Ames Petition, at 3). If the Court does what Ames is requesting, then the reasoning by which IUB avoided the self-help issue will no longer apply—it would have to address self-help in order to give Ames an enforceable right to sell power to USDA in its exclusive service area. Thus, if the reviewing Court finds that IUB's decision to alter exclusive service areas should be reversed on judicial review it will necessarily have to also rule on the other issue in front of the IUB, whether the United States is entitled to self-help, including for reasons of sovereign immunity.

To the extent there is any requirement for the United States to assert a federal defense, it need only assert one that is plausible. "For a defense to be considered colorable, it need only be plausible; § 1442(a)(1) does not require a court to hold that a defense will be successful before removal is appropriate." *Todd*, 245 F.3d at 693. A defendant need not assert "a clearly sustainable defense," nor does he need to "win his case before he can have it removed." *Willingham*, 395 U.S. at 407. Rather, "no determination of fact is required but it must fairly appear from the showing made that [the defendant's removal] claim is not without foundation and is made in good faith." *Colorado v. Symes*, 286 U.S. 510, 519 (1932). The United States has at the very least asserted a

plausible federal defense in good faith within the meaning of section 1442(a)(1).

V.     The IUB's Separate Arguments are Without Merit

The IUB filed a brief separate from Ames claiming additional grounds for remand. IUB first argues, essentially, that a state legislature can deprive a United States District Court of jurisdiction through an act of state law. Then they argue the Eleventh Amendment prevents a Federal Court from sitting in judicial review of a state agency adjudication. Both arguments are without merit.

IUB argues that because Iowa's Administrative Procedure Act does not create jurisdiction in federal court that there is no federal court jurisdiction, apparently regardless of what federal law has to say about the jurisdiction of United States District Courts. This argument wholly ignores the Supremacy Clause of the United States Constitution. USDA is not invoking the Court's jurisdiction based on state law, but under the federal removal statute. *See Willingham*, 395 U.S. at 406 (holding the right of removal is "absolute" where the jurisdictional prerequisites of 1442(a) have been met and "regardless of whether the suit could originally have been brought in a federal court"). Iowa's Administrative Procedure Act does not purport to limit jurisdiction created by federal law but, even if it did, such interference would be preempted. *See Arizona v. U.S.*, 567 U.S. 387, 399 (2012) (holding, under the Supremacy Clause, that federal law is the supreme Law of the Land and, therefore, that "state laws are preempted when they conflict with federal laws").

The Eleventh Amendment does not bar judicial review of a state agency adjudication. IUB argues that the State of Iowa has not consented to be sued and therefore, at least as to state law claims,[3] it cannot be sued in federal court under Eleventh Amendment principles. The Eleventh

---

[3]  IUB appears to concede that it would not be immune to federal claims. In any event USDA's assertion of a federal sovereign immunity defense is not a "claim" *against* IUB, but rather a defense against any relief that compels it to conform to the state utility scheme.

Amendment has been interpreted to bar lawsuits by a citizen of a state "against the state." *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 261 (1997). "Against the state" in this context means where the state is the real, substantial party in interest, such as one for recovery of money against the state. *Id.* at 277. "[T]he nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding." *Id.* (quoting *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 549, 463 (1945)). Here, no one has filed a lawsuit *against* the State of Iowa. IUB correctly noted that the procedural posture of this case is different than a typical civil action. The IUB is not a defendant against whom claims are being asserted. Rather, it is a quasi-judicial body whose decision applying law to the parties in front of it is under a form of appeal. Thus, to say the current action is *against* IUB would be like saying an appeal of a district court decision is *against* the district court judge. A state's immunity provided by the Eleventh Amendment does not apply to Ames' Petition for Judicial Review because, in examining the essential nature and effect of the proceeding, it is not against the State of Iowa. Ames seeks neither damages nor injunctive relief against the state. It seeks review of a decision in which the state agency was, essentially, the judge, and the real parties in interest appearing before that judge were Ames, IPL, and USDA. The USDA was able to find no cases, nor has IUB cited any cases, in which the Eleventh Amendment was found to apply under such circumstances. Finally, the United States' removal of the judicial review does not somehow transform the action into a lawsuit against the state, nor does the Eleventh Amendment apply to suits by the United States generally (assuming, arguendo that a removal were treated as filing suit against the state).[4]

---

[4] *See* U.S. Const. Amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.")

Federal Courts undoubtedly have jurisdiction to review state agency adjudications properly removed to federal court. In *City of Chicago v. International College of Surgeons*, the Supreme Court affirmed the propriety of removal based on federal question and supplementary jurisdiction of an action in Illinois state court under Illinois' Administrative Review Law for judicial review of a decision of Chicago's Historical and Architectural Landmarks Commission. *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 168-171 (1997). In reviewing its own precedent, the Court noted "that federal jurisdiction generally encompasses judicial review of state administrative decisions." *Id.* at 169. The only question was whether some applicable federal removal provision had been properly invoked. If it had and "nothing in the text of [the applicable removal statute] indicates an exception . . . for claims that require on-the-record review of a state or local administrative determination," then the Court had jurisdiction. *Id.* Although *International College of Surgeons* involved a different basis for removal jurisdiction, the principle remains the same – nothing in 28 U.S.C. § 1442(a) indicates an exception for review of state or local administrative determinations. If, for the reasons argued herein, removal under section 1442(a) is proper, then the fact that it involves review of a state administrative determination makes no difference.

The federal removal statutes provide no special exception for judicial review of the decisions of state agencies. The IUB has no special right not to have its decisions judicially reviewed by a federal court, nor can the State of Iowa deprive a federal agency of the right to a federal forum where permitted by federal law.

VI.  Even if They Prevail on Motion for Remand, the Parties Seeking Remand Should Not Be Awarded Fees

Although the federal removal statute permits an award of costs and expenses, including attorney fees, there is no presumption in favor of awarding fees. *Martin v. Franklin Capital Corp.*,

546 U.S. 132, 137 (2005). "[H]ad Congress intended to award fees as a matter of course to a party that successfully obtains a remand, we think that '[s]uch a bold departure from traditional practice would have surely drawn more explicit statutory language and legislative comment.'" *Martin*, 546 U.S. at 137 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). Accordingly, a fee award is appropriate only where the party seeking removal "lacked an objectively reasonable basis for seeking removal," and "[c]onversely, where an objectively reasonable basis exists, fees should be denied." *Id.* at 138. *See also Guggenheimer*, 2016 WL 7479542, at *13 (declining to award attorney fees after granting remand because United States removal was "based on a plausible argument" asserted "in good faith").

While the parties seeking remand have argued that removal is inappropriate they have put forth no argument that the USDA's position is so unreasonable as to be considered implausible or asserted in bad faith. Fee shifting is appropriate for "removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Martin*, 546 U.S. at 140. Here, USDA's motive is the opposite of prolonging litigation and imposing costs. USDA argues that the sovereign immunity issue must ultimately be addressed and that it should be addressed in a federal forum. If a state court reverses on state law grounds, leaving federal sovereign immunity unaddressed, then that issue will have to be addressed in future litigation. It will undoubtedly be more time-consuming, expensive, and wasteful of judicial resources to have two separate civil actions then to simply resolve all the issues, including sovereign immunity, in a single removed action. The USDA, in seeking to remove, acted in good faith and for the ultimate interest all of the parties have in obtaining a truly final decision that resolves the real underlying dispute in this matter. Thus, the request for fees should be denied even if the Court orders remand.

## CONCLUSION

For the foregoing reasons, the Motion to Remand should be denied.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By: */s/David L.D. Faith II*
David L.D. Faith II
Assistant United States Attorney
U.S. Courthouse Annex, Suite 286
110 E. Court Avenue
Des Moines, Iowa 50309
Telephone: (515) 473-9353
Facsimile: (515) 473-9282
Email: david.faith@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 10, 2020, I electronically filed the foregoing with the Clerk of Court using the ECF system and a true copy of the foregoing was served either electronically or by U.S. First Class Mail upon the following:

David Jay Lynch
Jacob W. Nelson
Jason Michael Craig
John Stewart Long
Jon C. Tack
Matthew T. Oetker

*/s/David L.D. Faith II*
David L.D. Faith II
Assistant U.S. Attorney